UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID CHRISTOPHER LEE WALTON,

      Plaintiff,

      v.                                       Case No. 22-C-479

VIRGINIA TRZEBIATOWSKI and
HANNAH UTTER,

      Defendants.

---

## DECISION AND ORDER

---

      Plaintiff David Christopher Lee Walton, a prisoner at Green Bay Correctional Institution who is representing himself, is proceeding on Eighth Amendment claims against Defendants Virginia Trzebiatowski and Hannah Utter based on assertions that they were deliberately indifferent to his severe head pain. On January 10, 2023, Utter filed a motion for summary judgment. The Court will grant Utter's motion. Trzebiatowski did not file a motion for summary judgment, so Walton's claim against her will proceed to trial.

### BACKGROUND

      At the relevant time, Walton was incarcerated at Green Bay Correctional Institution, where Utter, who is a registered nurse, worked as the health services unit (HSU) manager. As HSU manager, Utter was responsible for managing and supervising the health care that the HSU nursing staff and advanced care providers provided to inmates. Utter's role was administrative in nature; she did not have authority to prescribe medication (other than over-the-counter drugs), refer patients to offsite specialists, approve treatment recommendations from offsite providers, or order

imaging studies. Those decisions are made by the advanced care providers. Dkt. No. 30 at ¶¶1-5, 7-9.

Walton arrived at Green Bay on October 28, 2021. A couple of months prior, he had been seen by a neurologist for complaints of migraines, which he had characterized as "tolerable." The migraines were controlled by monthly injections along with a handful of other medications. The neurologist recommended that Walton be started on an additional medication and be seen for a follow-up in about three months. After Walton was transferred to Green Bay, a nurse scheduled an appointment for him with an advanced care provider to confirm if the recommended follow-up with the neurologist was still necessary. Walton continued to receive his medications (except for the injections which had not yet been delivered to Green Bay), including the additional medication recommended by the neurologist. *Id.* at ¶¶26-30.

On November 3, 2021, Trzebiatowski examined Walton and determined he would continue to receive the injections for his migraines as soon as the medication arrived at Green Bay. She also opted to discontinue some of the medications that she deemed unnecessary because Walton had misused his medication in an attempted overdose a couple days earlier. Walton asserts that he was never taken off these medications. *Id.* at ¶¶33-37.

On January 12, 2022, Walton was seen by an ophthalmologist for complaints of blurred vision and headaches. The ophthalmologist recommended Walton be seen by a neuro-ophthalmologist. Walton repeatedly asked the HSU staff whether his follow-up appointment with the neurologist had been scheduled. Nursing staff informed him that no neurology appointment had been ordered but his requests had been forwarded to his advanced care provider. He was also informed that an eye appointment had been scheduled and that he was referred to see his advanced care provider, but those appointments were being scheduled four to five months out. *Id.* at ¶¶38-43.

On March 1, 2022, Walton submitted a request to Utter explaining that he had been having "neuro head pain" for months and his advanced care provider refused to schedule a follow-up appointment with the neurologist. He also stated that he had been writing her since December 2021, but he was being told he would need to continue to wait to be seen for several more months. Utter explains that she reviewed his medical file and noted he had an appointment with an offsite specialist the following month. She responded to Walton a week later and informed him that he had an appointment scheduled in April, and if he would like a nursing visit for his headaches prior to that appointment he should let the HSU know. *Id.* at ¶¶44-46.

On March 10, 2022, Walton inquired whether an appointment with the eye doctor *and* neurologist had been scheduled. A nurse informed Walton that he had an upcoming "UW Eye Neuro" appointment. On March 17, 2022, Walton submitted a request directed to Utter asking her to help because HSU staff was not doing anything to address his head pain. He explained that only an eye appointment had been scheduled, not a neurology appointment. The nurse who triaged Walton's March 17 request did not forward the request to Utter. The nurse again informed Walton that he had a neuro eye appointment scheduled in April. *Id.* at ¶¶47-49.

On April 13, 2022, Walton was seen at U.W. Health Ophthalmology. He stated he was having shooting pains in his eyes along with headaches that caused blurry vision. The neuro-ophthalmologist observed persistent visual decline in Walton's right eye and recommended an MRI. Two weeks later, Trzebiatowski evaluated Walton and referred him back to his previous neurologist. On July 14, 2022, Walton had an MRI, and on August 11, 2022, he was seen by the neurologist. *Id.* at ¶¶50-62.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Walton asserts that Utter violated the Eighth Amendment because she was deliberately indifferent to his severe head pain. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that a prison official who acts with deliberate indifference to a substantial risk of serious harm to an inmate's health violates the Eighth Amendment). But a defendant will be liable for damages under §1983 only if she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Utter is entitled to summary

judgment because Walton fails to create a triable issue regarding whether Utter was personally responsible for the care he received (or did not receive) in response to his complaints of head pain.

Walton concedes that, as the HSU manager, Utter was not involved in decisions regarding what medications Walton should receive, whether he should see an outside specialist, which outside specialist he should see, or the scheduling of his appointments with outside specialists. Dkt. No. 30 at ¶64. Utter's role was merely administrative in nature—to provide support to the providers and to manage the overall functioning of the HSU. She had no authority to order specific care or override Trzebiatowski's medical judgment. The Seventh Circuit has consistently held that health services administrators working in a non-medical capacity are entitled to defer to a medical provider's treatment decisions unless they have reason to question the adequacy of the treatment. *Hill v. Meyer*, No. 21-2884, 2022 WL 1078871, at *4 (7th Cir. April 11, 2022) (citing *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021)). Walton provides no evidence supporting a conclusion that Utter had reason to doubt the adequacy of the care he was receiving. As noted, Walton was taking multiple medications for his head pain and had an upcoming appointment with a neuro-ophthalmologist to discuss his continued complaints of headaches and blurred vision. Although Walton desired to see an additional specialist, it was clear from his records that his condition was not being ignored. Accordingly, Utter did not violate the Constitution when she deferred to Trzebiatowski's treatment decisions.

Walton also asserts that Utter showed deliberate indifference to his condition when she lied to the institution complaint examiner, telling him that Walton's needs were being met. But Utter explains that she merely provided the institutional complaint examiner with the information in Walton's medical records—that Walton had been prescribed injections for his migraines, that he had been scheduled to see an offsite specialist (*i.e.*, the neuro-ophthalmologist), and that he had a pending appointment with his advanced care provider, all of which is true. Dkt. No. 25-1 at 2.

Further, Utter had no control over the institution complaint examiner's recommendation, and regardless, Walton suffered no actionable harm as a result of that recommendation. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Walton is frustrated that his follow-up appointment with the neurologist was delayed for nearly a year, but given that Utter had no responsibility for Walton's treatment and no authority to override his provider's treatment decisions, she is entitled to summary judgment.

## NEXT STEPS

Walton's claim against Trzebiatowski will proceed to trial. Given the complexity of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court concludes that Walton lacks the capacity to represent himself in the next stage of litigation. Accordingly, the Court will make efforts to recruit a volunteer lawyer to represent him. The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages Walton to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The Court will promptly notify Walton in the event a lawyer volunteers to represent him. In the meantime, the Court encourages the parties to explore whether settlement is possible.

## CONCLUSION

For these reasons, Defendant Hannah Utter's motion for summary judgment (Dkt. No. 21) is **GRANTED** and Walton's claim against her is **DISMISSED**.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of March, 2023.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
