UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID CHRISTOPHER LEE WALTON,

    Plaintiff,

v.                                                                                       Case No. 22-C-479

VIRGINIA TRZEBIATOWSKI,

    Defendant.

## DECISION AND ORDER

Plaintiff David Christopher Lee Walton, a prisoner at Green Bay Correctional Institution who is representing himself, is proceeding on an Eighth Amendment claim against Defendant Virginia Trzebiatowski based on allegations that she was deliberately indifferent to his severe head pain. On May 30, 2023, Trzebiatowski filed a motion for summary judgment. For the reasons explained in this decision, the Court will grant her motion.

## BACKGROUND

On August 17, 2021, Walton was examined by Dr. Xian Gu, a neurologist at the Fond du Lac Regional Clinic Neurology, for complaints of head pain. At that time, Walton's migraines were being controlled by Aimovig shots every month. Walton was also taking Trazodone, Lexapro, Lithium, Prazasin, Guaifenesin, Pepcid, and Excedrin. Dr. Gu recommended that Walton begin taking Tegretol (known as Carbamazepine) as needed to treat paroxysmal hemicrania with occipital neuralgia, which are neurological conditions that involve severe throbbing and claw-like shooting pain and headaches. *See Paroxysmal Hemicrania*, NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKES https://www.ninds.nih.gov/health-information/disorders/paroxysmal-hemicrania (last visited July 31, 2023); *Occipital Neuralgia*, NAT'L INST. OF NEUROLOGICAL

DISORDERS & STROKES https://www.ninds.nih.gov/health-information/disorders/occipital-neuralgia (last visited July 31, 2023). About two months later, on October 28, 2021, Walton was transferred to Green Bay Correctional Institution, where Trzebiatowski worked as a licensed advanced practice nurse provider. Walton arrived at Green Bay with all his medications except the drug Aimovig, which was not available at Green Bay when he arrived. Dkt. No. 47 at ¶¶5, 21-25; Dkt. No. 51 at ¶¶22-25.

A few days after arriving at Green Bay, on November 1, 2021, Walton was taken to the emergency room after he intentionally overdosed. He asserted that he had taken three days' worth of medication, including Lithium, Excedrin, Trazadone, Prazosin, Mucinex, Famotidine, and Lexapro. A couple days later, on November 3, 2021, Trzebiatowski saw Walton for an intake evaluation, at which she noted Walton's history of migraine headaches that were being treated with Aimovig. Her plan was to resume the injections once Aimovig was delivered to Green Bay. According to Walton, at the evaluation, he sought continued treatment for his occipital neuralgia. Trzebiatowski therefore continued his prescription for carbamazepine in solution form. Noting Walton's history of overdosing, Trzebiatowski informed Walton that her goal was to give him the least number of pills possible to minimize the risk of overdose. Trzebiatowski also noted an incident in Walton's records describing an assault of a female staff member, so to preserve limited resources and for the safety of nursing staff, she opted not to pursue a crush and float order for the administration of his tablet medications. Dkt. No. 47 at ¶¶27-29; Dkt. No. 51 at ¶28; Dkt. No. 45-1 at 6.

A couple weeks after the appointment, on November 19, 2021, Walton submitted a health services request noting that he had an offsite neurology appointment in August and was supposed to have a follow-up appointment two months later, but the follow-up did not happen because he was transferred to Green Bay. Dkt. No. 52-1 at 21. Walton inquired whether the follow-up had

2

Case 1:22-cv-00479-WCG   Filed 07/31/23   Page 2 of 7   Document 55

since been rescheduled. *Id.* Walton did not indicate in his request that he was experiencing any pain. A non-Defendant nurse responded that his request had been forwarded to an advance care provider for review. *Id.* About a month later, Trzebiatowski began a leave of absence in Florida.[1] She asserts that she was not involved in any patient care and had no responsibility for patient care during her leave. On December 29, 2021, after Trzebiatowski left Green Bay, Walton submitted a written request for an update regarding his follow-up neurology appointment. *Id.* at 22. He stated that he was "having a lot of head pains lately." *Id*. A non-Defendant nurse responded, "Scheduled within next 3 weeks." *Id.* Trzebiatowski returned to Green Bay on April 19, 2022. Walton initiated this lawsuit the next day, on April 20, 2022. Dkt. No. 47 at ¶¶31-33, 35, 37, 39, 41, 43, 62.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary

---

[1] In her declaration, Trzebiatowski asserts that "[i]n December, 2022 I traveled to Florida where I stayed until April 19, 2022." Dkt. No. 46 at ¶24. It is clear from the context that this is a typographical error and that Trzebiatowski traveled to Florida in December *2021*, not *2022*.

3

judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Walton asserts that Trzebiatowski violated the Eighth Amendment because she was deliberately indifferent to his severe head pain. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that a prison official who acts with deliberate indifference to a substantial risk of serious harm to an inmate's health violates the Eighth Amendment). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

Given Walton's complaints of severe head pain for which he has been prescribed numerous medications, a jury could reasonably conclude that he suffers from an objectively serious medical condition. A jury could not, however, reasonably conclude that Trzebiatowski was deliberately indifferent to that condition. Trzebiatowski evaluated Walton only one time before he initiated this lawsuit.[2] On November 3, 2021, within a week of Walton transferring to Green Bay and just

---

[2] Although in her declaration Trzebiatowski describes treatment decisions she made *after* Walton initiated this lawsuit, "[n]ormally, a complaint can seek relief only for events that have already occurred." *Chi. Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). If a plaintiff wants his complaint broadened to encompass subsequent events, he must move to supplement it. *See* Fed. R. Civ. P. 15(d) ("[o]n motion and reasonable notice, the court may on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented"). Walton did not move to supplement his complaint to include treatment decisions made after he filed his complaint, so those decisions are not at issue.

4

days after he had attempted an overdose, Trzebiatowski evaluated Walton, reviewed his records, and established a plan of care. She ensured Walton would continue to receive his Aimovig injections for his migraines once the medication arrived at Green Bay and she continued his prescription for carbamazepine in suspension form to treat his occipital neuralgia. But given Walton's documented history of attempted overdoses, including an attempt just days prior, Trzebiatowski did not believe it safe to allow him to possess all the pills he had been previously prescribed.[3] Although a crush and float order was an option, she did not deem this option viable because under such an order nurses would have to administer the medication. Trzebiatowski wanted to avoid further straining already limited nursing resources, and she noted in Walton's records that just prior to his transfer he had been accused of attacking a female staff member, so she did not want to expose female nurses to danger. Given Walton's recent overdose attempt and the danger she believed Walton posed to female staff members, no jury could reasonably conclude that her plan of care to limit Walton's medications to those that addressed his most serious conditions demonstrated deliberate indifference to Walton's condition. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (holding that a "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation").

A couple weeks later, Walton submitted a request inquiring about a follow-up neurology appointment. A nurse indicated that she forwarded the request to his advance care provider, but it is not clear from the record whether Trzebiatowski or some other provider received it. Regardless, Walton makes no mention of head pain in the request, suggesting that the medication

---

[3] The record is silent on whether Trzebiatowski canceled all of Walton's prescriptions for medications in pill form, or only some of the prescriptions. Walton does not challenge this decision.

5

Trzebiatowski had prescribed was, at least at that time, adequate. Even assuming Trzebiatowski received the request, no jury could reasonably conclude that she was deliberately indifferent to Walton's condition when she failed to promptly schedule a follow-up appointment because his symptoms appeared at that time to be adequately managed. The first time that Walton complained about head pain was December 21, 2021, but by then, Trzebiatowski had started her leave of absence and was no longer responsible for Walton's care. Walton complained numerous times over the next several months about increasing head pain, but Trzebiatowski is not liable for other providers' failures to respond to those complaints. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (a defendant will be liable for damages under §1983 only if she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with her knowledge and consent). As noted, Trzebiatowski returned to Green Bay on April 19, 2022, and Walton initiated this case the following day.

Given that no jury could reasonably conclude that Trzebiatowski was deliberately indifferent to Walton's condition during her limited interactions with him, she is entitled to summary judgment and this case must be dismissed.

## CONCLUSION

For these reasons, Defendant Virginia Trzebiatowski's motion for summary judgment (Dkt. No. 43) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 31st day of July, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.